FRANCIS DIDIEU, plaintiff in error, *v.* THE PEOPLE, defendants in error.

Form of an indictment for arson in the first degree.

Under an indictment for arson in the first degree, the defendant may be convicted of arson in the third degree, where the offence proved on the trial is the burning of goods, wares, merchandise or other chattels, insured against loss or damage by fire, with intent to prejudice the insurer.

The application to such a case of the statutory provision (2 *R. S.*, 762, § 25), which allows a conviction for any degree of the offence inferior to that charged in the indictment, is not a violation of the sixth section of the State Constitution, which declares that "no person shall be held to answer for a capital or otherwise infamous crime, unless on presentation or indictment of a grand jury."

On the trial of an indictment for arson in the first degree, evidence that the prisoner had obtained an insurance on the property burned, is competent on the question of motive.

THIS case came before the court on writ of error to the New York General Sessions, where the prisoner was indicted for arson in the first degree. The indictment was as follows:

*City and County of New York, ss:*

The jurors of the People of the State of New York, in and for the body of the city and county of New York, upon their oath, present:

That Francis Didieu, late of the fifth ward of the city of New York, in the county of New York aforesaid, on the twenty-first day of March, in the year of our Lord one thousand eight hundred and fifty-eight, at the ward, city and

county aforesaid, with force and arms, in the nighttime of the said day, a certain dwelling house of one Amelia Asselin, then and there situate (there being then and there, within the said dwelling house, some human being), feloniously, willfully and maliciously, did set fire to, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York, and their dignity.

PETER D. SWEENY,<br>
*District Attorney.*

The prisoner pleaded "not guilty," and the issue thus joined came on for trial on the 17th day of September, 1858, before Hon. A. D. Russell, city judge, and a jury.

After proving that the prisoner occupied a room at No. 86 Leonard street, in the city of New York, in which *Amelia Asselin* and others resided, and that a fire was discovered in the room of the prisoner on the night of the 21st of March previous, while the said Amelia Asselin was in the house, the prosecution called

*John Stillwell,* who testified as follows: I am an officer of the fifth ward; was on the corner of Broadway and Leonard street, when the alarm was given, about eight o'clock; I ran across to prisoner's; was told the room was on fire; I went to the room; the door was open; did not see him; saw the flames in the room; called for buckets of water; in about ten or fifteen minutes officer Webb came; after the fire was out, I found in the room two trunks and a box of shoes; no cover on the box; the lids of the trunks were down; saw smoke coming from a crack on the tops of the trunks; the box of shoes was in about centre of room; fire was in the inside of box, none on the outside; also, fire was inside the trunks; did not move in anything from the room except the box; saw places fired each trunk; in the box; in the bed, about the centre, in the blankets; all these fires were distinct from each other; we called in Mr. Baker to investigate the case; found boots and shoes on the wall, partition, and on wall over bed; moved the trunks a few feet, before Mr. Baker came.

Being *cross-examined* by counsel for the prisoner, he testi-
fied: No part of the room or building had been fired; that the
box and trunks were apart; there was no communication be-
tween them; the floor had not been burned; there was a smell
of camphene in the room, and in the trunks and boxes; I
extinguished the fire before Webb came; took the box into
the yard and emptied it, and put out the fire; took it back
again soon.

*Jacob Webb* was next sworn by the prosecution, and testified:
I am a police officer in the fifth ward; got to the fire about fif-
teen minutes past eight; found there a crowd of people; when
the fire was out I went into the room; found at the left side
of the room brackets on the wall; fire had been about four
feet from the surface; noticed trunks open; fire inside; no
fire on the outside; the box was about three feet square; fire
all inside, but none outside; found fire in centre of the bed;
found no trace of fire from one place to the other; no fire in
the stove; a slight burn by window casing near floor; I first
saw Didieu and boy with him come to the stoop; they went
in; I went into the house; saw Didieu in his room; asked
him if he was the owner; he replied, "Yes."

Witness was asked " whether the prisoner on that night did
not speak to him about his goods being insured?" To which
question prisoner's counsel objected, upon the ground that
it was irrelevant and immaterial, and that the indictment
contained no count as to prisoner's goods being insured or
burnt.

Objection overruled by the court. To which ruling prison-
er's counsel excepted.

In answer, witness stated that the prisoner said he was in-
sured for $800; I asked him when he heard of the fire, and he
said he had only just heard of it; I sent Didieu to the station
house; returned to the house with the fire marshal; examined
the room; found camphene had been spread about the things;
saw fire marshal next day find the padlock and two screw eyes;
the nosing of the door had been broken.

Upon his *cross-examination* by prisoner's counsel, he testified: That the room had not been burned; that the prisoner was a Frenchman; understood what he said to me.

*William A. Edwin* was sworn on the part of the prosecution, and testified: I am clerk and book-keeper in the Pacific Fire Insurance Company.

*Q.* Had your company any insurance on property at 86 Leonard street?

Objected to by prisoner's counsel as irrelevant and immaterial, and not a proper subject of inquiry, under the present indictment.

Objection overruled by the court. To which ruling the prisoner's counsel excepted.

*A.* Yes, we had.

*Q.* When? For what amount, and on what goods?

Objected to, upon the ground that a policy of insurance had been given, and it should be produced.

The District Attorney then called upon the prisoner and his counsel to produce the policy of insurance, which counsel said he did not have, and had never seen.

The court overruled the objection, and allowed the evidence; to which ruling prisoner's counsel excepted.

The book I have contains a transcript of the policy; it is in my handwriting: "Mr. Francis Didieu, on stock of boots and shoes, $600; household furniture, beds and bedding, $100; on his clothing and linen, $100; contained in the fourth story, brick front, frame, tin roof, part filled in, store and dwelling, situate in this city, No. 86 Leonard street, at one per cent, expiring Dec. 11th, 1858." Don't think any claim has been made for loss; sixty days is the time to make the claim.

After further evidence had been given on both sides, the prisoner's counsel began to sum up to the jury, when the District Attorney interrupted him, and stated to the court and jury that the evidence would not warrant him in pressing the charge contained in the indictment, because the freehold or no portion of it was burnt, and he would therefore abandon that part of the charge and case; but would claim that the jury

Didieu *v.* The People.

could convict the prisoner of arson in the third degree, in burning his insured goods, with the intent to prejudice and defraud the insurance company.

The prisoner's counsel then moved the court for the discharge of the prisoner, upon the ground that there was no count in the indictment alleging the burning of his goods with the intent to prejudice any insurance company, but only one count for arson in the first degree ; and counsel also asked the court to instruct the jury, that the prisoner, under the indictment, could not be found guilty of arson in burning his goods with the intent to prejudice the insurance company; which motion was denied by the court, and to which prisoner's counsel excepted.

The court charged the jury, among other things, that if the evidence warranted it, they could find the prisoner guilty of arson in the third degree, in burning his property, with intent to prejudice an insurance company, or any of the lesser degrees named in statute, notwithstanding he was only indicted for arson in the first degree, and notwithstanding there was no count in the indictment averring that statutory offence in express terms.

To which portion of the charge of the court, the prisoner's counsel excepted.

The jury thereupon found the prisoner guilty of arson in the third degree, in burning his property, with intent to prejudice the insurance company.

*A. Oakey Hall,* for the prisoner.

I. The indictment was for a simple and not complex crime, to wit: arson of an inhabited dwelling house in the nighttime; and the crime of the conviction and sentence was not included therein.

(*a.*) He was not informed by indictment of any such charge against him as arson in defrauding an insurance company.

(*b.*) The point is believed to be sustained analogously by this court in *Shepard's* case. (19 *N. Y. R.,* 544.)

II. The statute permitting a conviction for a lesser degree, under indictment for a superior degree, is to be read rationally. The inferior degree must be generic to the superior.

But arson to defraud an insurance company, is a creation of the statute unknown to the common law, and not included in arson first degree.

The permissive word of the statute is "may"—*i. e.*, if the indictment contains enough to apprise a defendant of the lesser charge, the words are "*consisting* of."

But section 37, 3 *R. S.*, 989, is to be taken with section 53 of page 109. (*People* v. *Jackson,* 3 *Hill,* 94, *and cases cited.*)

The evidence of insurance policy in furnishing proof of *motive,* might not be so important for the prisoner to combat as if it were offered in support of the *corpus delicti;* but evidence in illustration and evidence to substantiate present very different considerations of admissibility.

Didieu did not come prepared with his policy even as it appeared, and he may have had witnesses to show that the value of the goods exceeded the value stated in the insurance policy, all of which would have been very material.

III. The essence of the crime for which the prisoner was convicted, is its intent—intent to defraud a company, and this intent should be averred.

(*a.*) Other kinds of arson may be merely malicious. This is an *avaricious* arson also. (*People* v. *Henderson,* 1 *Park. Cr. R.,* 563.)

(*b.*) Where an intent is essential to constitute a crime, that intent must be distinctly averred in the indictment. (*Gore's Case,* 34 *N. H.,* 510.)

IV. The indictment in no wise sustaining the conviction, it should be absolutely reversed.

*Nelson J. Waterbury* (District Attorney), for the People.

I. Evidence, as to the fact of prisoner having property insured in the house, was admissible, as touching the question of motive. (*People* v. *Shephard,* 19 *N. Y. R.,* 544.)

II. The charge of the court is supported by section 38 of Revised Statutes (*3d vol.*, *5th ed.*, 989): "Upon an indictment for any offence consisting of different degrees, as prescribed in this chapter, the jury may find the accused not guilty of the offence in the degree charged in the indictment, and may find such accused person guilty of any degree of such offence inferior to that charged in the indictment, or of an attempt to commit such offence."

Burning property insured is arson in the third degree. (§ 5, *3d vol.*, *R. S.*, *5th ed.*, 946.)

*By the Court,* ROOSEVELT, J.   The prisoner, Didieu, was convicted, in the Court of General Sessions, of the crime of arson in the third degree, "for burning his property with intent to prejudice the insurance company."   A bill of exceptions was taken by his counsel, and returned with the proceedings of the Supreme Court.

The prisoner insists, and it is the main point relied on, that the indictment which he was called upon to answer, did not charge him with the offence of which he was found guilty, and that he was virtually convicted therefor, without being indicted; while the Constitution declares that "no person shall be held to answer for a capital or otherwise infamous crime, unless on presentation or indictment of a grand jury."

The offence charged, it appears, was setting fire, in the night-time, to an inhabited dwelling house, the property " of Amelia Asselin," the penalty for which is death.   On the trial, the District Attorney admitted that the proof, although sufficient to establish the burning of the goods, was insufficient to show that any portion of the building was burned.   He claimed, however, and the court so held, that the prisoner, having been charged with a higher, might, notwithstanding, be convicted, not of a lesser offence, but of a lesser *degree* of the same offence.   And if the statute in relation to offences " of different degrees," is in that respect constitutional, such would seem to be the inevitable result.

Arson, in all its grades, whatever may before have been its common law character, is now a statutory offence, and " all the common law punishments," formerly applicable to it, are expressly "prohibited." (2 *R. S.*, 701, § 17.) It is declared by the statute to be an offence of four degrees : the first, capital, the other three subject only to imprisonment. The first degree, it is admitted, corresponds with the charge in the present indictment, and the third degree with the offence actually established. (2 *R. S.*, 667, § 4.)

The crime charged was arson by statute, and the crime proved was arson by statute. The essence of the act in either case, was the unlawful setting fire to combustible materials, whether houses or merchandise, endangering the lives or pecuniary interests of others. So, at least, the Legislature have seen fit to regard it. For, instead of creating different crimes, they have divided the cases into different degrees of the same crime, declaring, at the same time, that " upon an indictment for any offence, consisting of different degrees, as prescribed in this chapter (the different degrees of arson are prescribed in it), the jury may find the accused not guilty of the offence in the degree charged in the indictment, and may find such accused person guilty of any degree of such offence, inferior to that charged in the indictment, or of an attempt to commit such offence."

It is said, however, that even if the Legislature had power to classify offences, different in their nature, under one general head, and to designate them, however unlike, as different degrees of the same offence, yet they had no power to deprive the accused party of a proper specification in advance of the matters alleged against him. But there is an obvious answer to this objection. The prisoner, being chargeable with knowledge of the law, was bound to take notice that the crime of arson are of different degrees; that under an indictment for a higher, he might be found guilty of a lower degree; that, although charged with setting fire to the building, he might be tried for setting fire to the goods and furniture in the building, even if the building itself (a very unlikely occurrence) should

escape ignition; and that, therefore, he must prepare himself to meet the charge in all its inferior degrees, not according to his own understanding of degrees, but according to the definitions of the Legislature, " as prescribed in this chapter." When, therefore, he was charged with burning the house, he knew that the charge comprehended that of burning the goods in the house. There are grave objections, no doubt, to this brief and even vague mode of pleading in criminal cases, but I see in them no sufficient warrant for declaring the law which authorizes it void. Nor do I see that any evil to the prisoner has resulted in this particular case. The building in question, it appears, was a four-story tenement house, with brick front only, with families on each floor. In the prisoner's apartment there were a bed and three trunks or boxes. In each of these he placed camphene, which, on being ignited, produced at first a smothered fire, but ultimately a flame. Such an act, it would seem, was scarcely distinguishable in criminality from the first degree of arson. It was setting fire to that which must almost inevitably result in igniting the building. Indeed, one of the witnesses swears that he " saw a slight burn by the window casing, near the floor." Can it be contended that a man who deliberately, in the night time, applies a lighted torch to a bale of hay in a wooden tenement filled with human beings, is not guilty of setting fire to the tenement? The offence, it will be remembered, is not the actual burning of the dwelling, but the setting fire to it.

As to the proof of insurance on the goods or supposed goods, it would seem to have been clearly admissible as showing fraudulent design on the part of the prisoner, or, in other words, to establish the allegation in the indictment, that the act was done " feloniously, willfully and maliciously." If the evidence, then, was admissible, and tended to convict the prisoner of the first degree of arson, as charged in the indictment, what ground has he to complain, that through the leniency of the public prosecutor the jury acquitted him of the offence in that degree, but found him guilty (as the statute expresses it), of a degree of the offence "inferior to that charged."

Our decision, therefore, is, that the exceptions taken at the trial be overruled, and that the proceedings be remitted to the court in which the trial was had, with directions to proceed and render judgment according to law.

Proceedings affirmed.

---

SUPREME COURT. Kings General Term, December, 1858. *S. B. Strong, Emott* and *Brown,* Justices.